IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>VINCENT T. PHARR | Criminal Action No.<br>1:19-CR-00346-MHC-JSA<br><br>Civil Action No.<br>1:21-cv-2912-MHC-JSA |

## Response to 28 U.S.C. § 2255 Motion

The United States of America, by Kurt R. Erskine, Acting United States Attorney, and Calvin A. Leipold, III, Assistant United States Attorney for the Northern District of Georgia, hereby files this Response to Vincent Pharr's 28 U.S.C. § 2255 Motion to Vacate, Set Aside, or Correct Sentence.

## Background

Pharr was convicted, pursuant to his plea, of two counts of a three-count indictment. Pharr pled guilty to Count 1, which charged a violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(D) and Count 2, which charged a violation of 18 U.S.C. § 924(c). (Doc. 25). Pursuant to the plea agreement, Count 3 was dismissed. (Doc. 34 at 17). On April 5, 2020, the Court sentenced Pharr to 21 months on Count 1 and 60 months on Count 2 to run consecutively, for a total of 81 months imprisonment. *Id*. at 18. Pharr did not appeal.

He filed his present 28 U.S.C. § 2255 motion on July 19, 2021. (Doc. 35). On July 23, 2021, the Court ordered the government to respond to the motion within

30 days. (Doc. 36). On August 27, 2021, the court granted the United States an additional seven days to respond to Pharr's motion. (Doc. 38). Pharr is currently incarcerated with a projected release date of May 15, 2025. *See* Bureau of Prisons, http://www.bop.gov (last visited August 30, 2021).

## Statement of Facts

The PSR determined that the base offense Guideline for 21 U.S.C. § 841(a) offenses is Section 2D1.1 of the United States Sentencing Guidelines ("U.S.S.G."), which indicates a base offense level of 18 due to the defendant being responsible for 50.5825 kilograms of marijuana. (PSR ¶ 25). The defendant received a two-level enhancement for maintaining a premises for the purposes of drug distribution under U.S.S.G. § 2D1.1(b)(12). (PSR ¶ 27). After receiving a three-level reduction for acceptance of responsibility the defendant has a total offense level of 17. (PSR ¶¶ 33-34). Pharr's Criminal History Category ("CH") was IV. (PSR ¶ 33). The advisory custody Guidelines range for Count One was imprisonment for a term of 37-46 months. The advisory custody Guidelines range for Count 2 was 60 months, which must be served consecutively to Count 1. In total, the PSR calculated the custody Guidelines range at 97-106 months and a fine of $10,000 to $95,000. (PSR, Part D. Sentencing Options).

Pharr's counsel objected to the offense level for Count 1. (Doc. 34 at 5). Pursuant to the plea agreement, the parties had agreed that 7.7 kilograms of marijuana was foreseeable to Pharr. *Id*. at 5-6. The Court sustained defense counsel's objection, which changed the attributable drug quantity from over 50 kilograms of marijuana to 7.7 kilograms of marijuana, and imposed a base

2

offense level of 12 for Count 1. *Id* at. 8. This changed the custody guideline for Count 1 to 21 to 27 months, and did not impact the guideline for Count 2. *Id*. at 11.

In arguing for a lower drug weight, defense counsel noted that he considered a role adjustment for Pharr. *Id*. at 7. However, counsel noted, "we did not ask for a role reduction or any of those things because we recognized we were going to be held responsible for the amount [of drugs] reasonably foreseeable by Mr. Pharr." *Id*.

The Government recommended a sentence of 87 months, which represented the high end of the Guidelines on Count 1 and a 60-month mandatory minimum on Count 2. *Id*. at 14. Defense counsel requested a sentence of 81 months, the low end of the Guidelines on Count 1 and a 60-month mandatory minimum on Count 2. *Id*. at 16. The District Court, after consideration of the 18 U.S.C. § 3553(a) factors, imposed a total sentence of 81 months imprisonment. *Id*. at 18.

## Discussion

Pharr raises two issues in his motion. First, he claims that due to equitable tolling, his motion should be considered despite being filed more than one year after his sentencing date. (Doc. 35 at 6-8). Second, he claims that his counsel was ineffective at sentencing in two ways: (1) he failed to seek a minor role adjustment, and (2) counsel failed to seek a reduced sentence due to the COVID-19 pandemic. (Doc. 35 at 10). Pharr has not met his heavy burden to justify equitable tolling. Even if he had, he failed to meet his burden under *Strickland* to

3

establish that his counsel provided constitutionally ineffective assistance at sentencing.

1. **The facts proffered by Pharr do not support equitable tolling of the statute of limitation**s.

Pharr's motion is time-barred because it was not filed within one year of any trigger date under 28 U.S.C. § 2255(f), and he has failed to show that equitable tolling is warranted. Thus, his motion is untimely.

Title 28, U.S.C. § 2255(f) establishes a one-year limitation period for § 2255 motions, explicitly requiring that the one-year limitation period shall run from:

1. the date on which the judgment of conviction becomes final;

2. the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

3. the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

4. the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f) (as amended by the AEDPA) (1997).

"A conviction ordinarily becomes final when the opportunity for direct appeal of the judgment of conviction has been exhausted." *Akins v. United States*, 204 F.3d 1086 (11th Cir. 2000) (citing *United States v. Dayton*, 981 F.2d 1200, 1203

(11th Cir. 1993)); *see also Washington v. United States*, 243 F.3d 1299, 1301 (11th Cir. 2001) (holding that where a defendant is unsuccessful on appeal and files a petition for certiorari with the Supreme Court, the one-year period begins to run when the Supreme Court either denies certiorari or issues a decision on the merits); *Kaufmann v. United States*, 282 F.3d 1336, 1338 (11th Cir. 2002) (holding that when a prisoner does not petition for certiorari, his conviction does not become "final" for purposes of § 2255(f)(1) until the expiration of the 90-day period for seeking certiorari).

Pharr's motion is time-barred under 28 U.S.C. § 2255(f)(1). His conviction became final on April 19, 2020, the expiration of the 14-day period wherein he could have filed a direct appeal. *See* Fed. R. App. P. 4(b)(1)(A); *Murphy v. United States*, 634 F.3d 1303, 1307 (11th Cir. 2011) (holding that "when a defendant does not appeal his conviction or sentence, the judgment of conviction becomes final when the time for seeking that review expires"). Accordingly, the one-year statute of limitations for Pharr to file a § 2255 motion expired on April 19, 2021. Pharr's present motion, filed on July 23, 2021, falls well outside the one-year time limitation required by 28 U.S.C. § 2255(f)(1). *See Wayne v. Jarvis*, 197 F.3d 1098, 1104 (11th Cir. 1999) (recognizing that pro se status does not excuse a defendant's "lack of compliance with a deadline imposed by law," as "[l]iberal construction does not mean liberal deadlines"), overruled in part on other grounds by *Manders v. Lee*, 338 F.3d 1304, 1328 n. 52 (11th Cir. 2003)); *see also Loren v. Sasser*, 309 F.3d 1296, 1304 (11th Cir. 2002) ("[d]espite construction leniency afforded pro se litigants, we nevertheless have required them to conform to procedural

rules"); *Garvey v. Vaughn*, 993 F.2d 776, 780 n. 11 (11th Cir. 1993) (collecting cases concluding that the rationale of *Houston v. Lack*—the Supreme Court decision that held that a pro se prisoner's notice of appeal is deemed filed when it is delivered to prison authorities—had not created "an exception for a pro se inmate to [otherwise] evade time requirements," and does not excuse inmates who deliver papers to prison officials after the deadline); *Brandau v. Warden*, 476 F. App'x 367, 369 (11th Cir. 2012) ("Although we liberally construe pro se filings, we nonetheless require that they comply with procedural rules, including applicable filing deadlines") (citing *Moton v. Cowart*, 631 F.3d 1337, 1341 n.2 (11th Cir. 2011)).

"In the § 2255 context, equitable tolling 'is appropriate when a movant untimely files because of extraordinary circumstances that are both beyond his control and unavoidable even with diligence.'" *Jones v. United States*, 304 F.3d 1035, 1039 (11th Cir. 2002) (quoting *Sandvik v. United States*, 177 F.3d 1269, 1271 (11th Cir. 1999) (per curiam)). However, "[b]ecause it is 'an extraordinary remedy,' . . . equitable tolling has been permitted by federal courts 'only sparingly.'" *Jones*, 304 F.3d at 1038-39. Further, "[t]he petitioner has the burden of proving entitlement to equitable tolling by showing that 'extraordinary circumstances that were both beyond his control and unavoidable even with diligence' prevented filing the petition on time." *Jones*, 304 F.3d at 1040.

Here, Pharr alleges a series of events that denied him access to a law library to research and file his motion over a period of multiple months. (Doc. 35 at 6-8).[1] These events occurred to the restrictions imposed on inmates due to the COVID-19 pandemic. In essence, Pharr was kept in his cell, as were other inmates, to mitigate the spread of COVID-19 inside the prison. *Id*. Once those restrictions were lifted, he filed his motion within sixty days.

The facts alleged by Pharr are not sufficient to meet the extraordinary circumstances required to justify equitable tolling. Pharr argues that he was not allowed access to a law library. Even so, as with the lack of legal knowledge, lack of access to a law library is not an extraordinary circumstance warranting equitable tolling. *Akins v. United States*, 204 F.3d 1086, 1090 (11th Cir. 2000) (" The mere inability of a prisoner to access the law library is not, in itself, an unconstitutional impediment"); *United States v. Delqado*, 2003 WL 21219850, *2 (S.D.N.Y. May 22, 2003) (unpublished) (petitioner claimed that during his time in state custody and segregated housing he had limited to no access to federal legal materials; however, a lack of access to legal resources is not considered an extraordinary circumstance); *Robinson v. Schafer*, 305 F. App'x 629, 630 (11th Cir. 2008) (pro se status, ignorance of the law, and slow or delayed administrative processes do not warrant equitable tolling); *Cross Bey v. Gammon*, 322 F.3d 1012, 1015 (8th Cir. 2003) ("'[e]ven in the case of an unrepresented prisoner alleging a

---

[1] The Government spoke with an employee of FCI Herlong and verified that the restrictions imposed on Pharr during his time at that facility were consistent with the restrictions alleged in his motion.

lack of legal knowledge or legal resources, equitable tolling has not been warranted'") (internal citations omitted)).

"[P]rison law libraries and legal assistance programs are not ends in themselves, but only the means for ensuring a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." *Lewis v. Casey*, 518 U.S. 343, 351, 116 S. Ct. 2174 (1996) (internal quotations omitted); *see also Akins*, 204 F.3d at 1090 (inmate must show that inability to access the law library caused actual harm, i.e., unconstitutionally prevented him from exercising the fundamental right of access to the courts).

Moreover, in order to prevail under 28 U.S.C. § 2255(f)(2), the alleged governmental impediment must be unconstitutional and "not reasonably related to legitimate penological interests." *Akins*, 204 F.3d at 1090 (internal citations and quotations omitted); *Al-Amin v. Smith*, 511 F.3d 1317 (11th Cir. 2008) (citing *Turner v. Safley*, 482 U.S. 78, 89, 107 S.Ct. 2254 (1987)) (when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to a legitimate penological interest). Here, Pharr states that the lockdowns in the various facilities where he was held were based on COVID-19. (Doc. 35 at 6-8). The Bureau of Prisons has a legitimate penological interest in taking measures to stop the spread of a deadly pandemic. Pharr has made no showing, and does not even attempt to argue, that the lockdowns were not reasonably related to a penological interest of the BOP. *See, e.g., Sanchez v. United States*, 170 F. App'x 643, 647 (11th Cir. 2006) ("[A]n alleged governmental impediment must be unconstitutional, such as one that is not reasonably related

8

to legitimate penological interests." (cleaned up)); *cf. United States v. Courson*, 835 F. App'x 546, 547 (11th Cir. 2021) ("The prison's pandemic-related library restrictions are reasonably related to a legitimate interest." (cleaned up)).  Pharr still had access to the mail and could have filed a motion within the one-year statute of limitations.  Accordingly, Pharr cannot claim the governmental-impediment exception of § 2255(f)(2).

   **2. Pharr has failed to meet his burden under *Strickland* to establish that his counsel's representation fell below an objective standard of reasonableness, and that he was prejudiced by counsel's alleged errors.**

According to Pharr, he was entitled to a downward adjustment for his minor role in the offense under Section 3B1.2 of the United States Sentencing Guidelines.  (Doc. 35 at 10).  Further, he argues that his counsel was ineffective for failing to seek a downward variance or departure at sentencing due to COVID-19.  *Id*. at 26-27.  But Pharr has failed to meet his burden under *Strickland* as to any allegation of ineffective assistance at sentencing.

   **A. Standard for Establishing Ineffective Assistance of Counsel**

In order to prevail on a claim of ineffective assistance of counsel, a defendant has the burden to prove by a preponderance of the evidence both incompetence and prejudice, *i.e.*, that "(1). . . counsel's representation fell below an objective standard of reasonableness [incompetence], and (2). . . there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different [prejudice]."  *Chandler v. United States*, 218

F.3d 1305, 1312-13 (11th Cir. 2000) (en banc); *see also Strickland v. Washington*, 466 U.S. 668 (1984). But "there is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697; *Chandler*, 218 F.3d at 1312.

"'Counsel's competence . . . is presumed and the [defendant] must rebut this presumption by proving that his attorney's representation was unreasonable under prevailing professional norms[.]" *Chandler*, 218 F.3d at 1315, n.15 (alterations and emphasis in original) (noting that the "presumption of competence must be disproved by a petitioner"). "Never does the government acquire the burden to show competence, even when some evidence to the contrary might be offered by the petitioner." *Id.* The standard for evaluating counsel's performance is "'reasonableness under prevailing professional norms.'" *Chandler*, 218 F.3d at 1313. To prove ineffectiveness, a defendant must show that his attorney's representation "fell outside the wide range of professionally competent assistance." *Id.* at 1314 (internal quotation marks omitted). "This standard of effectiveness applies equally to both the guilt and the sentencing phases of the trial." *Mills v. Singletary*, 63 F.3d 999, 1020 (11th Cir. 1995); *Strickland*, 466 U.S. at 686-87.

When evaluating an attorney's performance, the court must be highly deferential. *Chandler*, 218 F.3d at 1314. The court "must avoid second-guessing counsel's performance." *Id.* Instead, the court must "indulge [the] strong presumption that counsel's performance was reasonable and that counsel made

all significant decisions in the exercise of reasonable professional judgment." *Id.* (internal quotation marks omitted) (alteration in original). Thus, "counsel cannot be adjudged incompetent for performing in a particular way in a case, as long as the approach taken 'might be considered sound trial strategy.'" *Id.* (quoting *Darden v. Wainwright,* 477 U.S. 168 (1986)). "[B]ecause counsel's conduct is presumed reasonable, for a petitioner to show that the conduct was unreasonable, a petitioner must establish that no competent counsel would have taken the action that his counsel did take." *Chandler*, 218 F.3d at 1315. Moreover, when reviewing counsel's performance, the court "must evaluate the reasonableness of counsel's performance from counsel's perspective at the time," not with the distortion of hindsight. *Id.* at 1316. "The reasonableness of a counsel's performance is an objective inquiry." *Id.* at 1315.

To show prejudice, a defendant must show more than simply that counsel's conduct might have had "some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693. "Virtually every act or omission of counsel would meet that test, and not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding." *Id.* (internal citation omitted). Instead, a defendant must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 2068. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Prejudice is established only by showing that the

11

result of the proceeding was fundamentally unfair or unreliable. *Lockart v. Fretwell*, 506 U.S. 364, 372 (1993).

### B. Analysis

First, Pharr has failed to carry his burden under *Strickland* to establish incompetence. He alleges that counsel was ineffective for failing to request a minor role adjustment. (Doc. 35 at 10). However, his counsel clearly considered whether he believed that Pharr was entitled to a role reduction. (Doc. 34 at. 7). Counsel did not object because Pharr was only held accountable for the drugs reasonably foreseeable to him – the 7.7 kilograms of marijuana packaged in the apartment. He was not held accountable for any of the vape pens or THC gummies that the PSR attributed to him. (PSR ¶ 25). Defense counsel successfully objected to the drug weights listed in the PSR. This caused a reduction in Pharr's recommended Guideline sentence from 37-46 months to 21-27 months. (PSR, Part D. Sentencing Options; Doc. 34 at 11).

Importantly, counsel's decision to not object was well grounded in the law of the 11th Circuit. When seeking a mitigating role adjustment, "[t]he proponent of the downward adjustment — here the defendant — always bears the burden of proving a mitigating role in the offense by a preponderance of the evidence." *United States v. De Varon*, 175 F.3d 930, 939 (11th Cir. 1999). To be entitled to a minor role adjustment, a defendant must prove that he is "less culpable than most other participants in the criminal activity, but whose role could not be described as minimal." USSG §3B1.2, cmt. n.5. The district court has

"considerable discretion in making this fact-intensive determination." *United States v. Boyd*, 291 F.3d 1274, 1277-78 (11th Cir. 2002).

In determining a defendant's role in the offense, the district court must "[f]irst, and most importantly . . . measure the defendant's role against the relevant conduct for which [he] was held accountable at sentencing." *De Varon*, 175 F.3d at 940, 945. And "we recognize that in many cases this [first] method of analysis will be dispositive." *Id.* at 945. "In other words, the district court must assess whether the defendant is a minor or minimal participant in relation to the relevant conduct attributed to the defendant in calculating [his] base offense level." *Id.* at 941. "This methodology is essential to any evaluation of mitigating role." *Id.* at 944. "Only if the defendant can establish that [he] played a relatively minor role in the conduct for which [he] has already been held accountable — not a minor role in any larger criminal conspiracy — should the district court grant a downward adjustment for minor role in the offense." *Id*. "Second, the district court may also measure the defendant's role against the other participants, to the extent that they are discernable, in that relevant conduct." *Id*. at 944-45.

Here, the relevant conduct that the defendant was held accountable for was *only* the 7.7 kilograms of marijuana. Not the larger conspiracy involving a tractor trailer full of money, the vape pens or THC gummies in the apartment, or the nationwide marijuana smuggling scheme discussed by Pharr in his motion. (Doc. 35 at 13-15). Pharr did not have a minor role in the relevant conduct for which he was held accountable. This is dispositive under the first prong of the

*De Varon* analysis and ends the inquiry of whether Pharr was entitled to a role adjustment. *De Varon*, 175 F.3d at 945. Recognizing that this was the law, counsel for Pharr did not request a role adjustment, as Pharr was not entitled to one. Counsel's decision to object to the attributed drug quantity, resulted in a six-level reduction in Pharr's guidelines. However, it also eliminated any argument that Pharr had a minor role in the relevant conduct, which would have granted him a two-level reduction. Choosing, and obtaining, a six-level reduction at the cost of a potential two-level reduction is sound strategy. Certainly, it represents "'reasonableness under prevailing professional norms.'" *Chandler*, 218 F.3d at 1313. It is hard to imagine any non-frivolous argument counsel could have made that would have persuaded the court to find that Pharr had a minor role in possessing only the drugs he was held accountable for that were found in his possession.

Thus, Pharr has failed to establish that his counsel was incompetent for failing to seek a role adjustment. *See Wilson v. United States*, 962 F.2d 996, 998 (11th Cir. 1992) (the court held the real problem with Wilson's ineffective assistance argument is that he has not suggested any factual basis upon which counsel could have relied, and Wilson has neither shown counsel's performance to be inadequate nor any resulting prejudice except for his own bald assertion that counsel was ineffective); *see also Bolender v. Singletary,* 16 F.3d 1547, 1573 (11th Cir. 1994) (holding that "it is axiomatic that the failure to raise nonmeritorious issues does not constitute ineffective assistance"); *Chandler v. Moore*, 240 F.3d 907, 917 (11th Cir. 2001) (holding that counsel is not ineffective for failing to raise a

non-meritorious issue); *Freeman v. Attorney General, Florida*, 536 F.3d 1225, 1233 (11th Cir. 2008) ("*A lawyer cannot be deficient for failing* to raise a meritless claim"); *Francois v. Wainwright*, 741 F.2d 1275, 1285 (11th Cir. 1984) (holding that failure by counsel to brief issues "reasonably considered to be without merit" does not constitute ineffective assistance (internal quotation marks omitted)).

Pharr also argued that his counsel was ineffective for failing to argue for a lower sentence due to COVID-19. (Doc. 35 at 22). However, Pharr cites to no cases that support this novel argument, and the Government is also aware of no courts finding that a failure to argue for a lower sentence due to the COVID-19 pandemic makes defense counsel ineffective. Indeed, as Pharr notes, the District Court was well aware of the pandemic as the sentencing hearing was held remotely. *Id*. at 23.

Pharr then alleges a series of health issues that put him at risk for COVID-19. *Id*. at 24-26. Pharr claims that he is obese, which is borne out in the PSR's statement that he weighs 360 pounds. (PSR ¶ 71). He then claims to have hypertension and a heart murmur. (Doc. 35 at 25). However, none of these conditions are reflected in the PSR. Instead, Pharr told the probation officer that he was healthy and had no history of health issues. (PSR ¶ 72).

There was no evidence that Pharr had health issues, other than being obese, that placed him at increased risk for COVID-19. There is no evidence that Pharr made anyone aware of his medical issues. However, there is direct evidence from Pharr's statements to the probation officer, that he did not have any significant health concerns. *Id*. Accordingly, his counsel had no basis to

effectively argue for a downward variance or departure in his sentence.[2]  Thus, Pharr has failed to establish that his counsel was incompetent for failing to seek a downward variance or departure.  *Wilson v. United States*, 962 F.2d 996, 998 (11th Cir. 1992).

Second, in addition to the fact that Pharr has failed to carry his burden to establish that his counsel was incompetent, so this court need not address the prejudice prong, Pharr also cannot establish prejudice.  *See Strickland*, 466 U.S. at 697 ("there is no reason for a court deciding an ineffective assistance claim to . . . address both components of the inquiry if the defendant makes an insufficient showing on one").  To show prejudice "[i]n the sentencing context, the defendant must show a reasonable probability that his sentence would have been different."  United States v. Alvarez, 184 F. App'x 876, 881 (11th Cir. 2006).  Here, the District Court rejected the sentence sought by the Government and sentenced Pharr as requested by his counsel.  (Doc. 34 at 16, 18).

---

[2] Pharr's stated medical condition as reflected in the PSR does not meet the Guidelines policy statement regarding a basis for downward departures due to health concerns.  U.S.S.G. § 5H1.4.

The record shows that the district court carefully considered and applied all of the 18 U.S.C. § 3553(a) factors, and fashioned a reasonable sentence. (Doc. 34 at 20-24). Nothing in the record indicates that the court would have for any reason sentenced Pharr below 81 months. (Doc. 34). Pharr simply speculates in his motion that he would have received a lower sentence if counsel made an argument based on a role adjustment or COVID-19. (Doc. 35 at 27-29). And "where the effect of an error on the result in the district court is uncertain or indeterminate—where we would have to speculate—the [defendant] has not met his burden of showing a reasonable probability that the result would have been different but for the error; he has not met his burden of showing prejudice." *United States v. Rodriguez*, 398 F.3d 1291, 1301 (11th Cir. 2005); *see also United States v. Jones*, 614 F.2d 80, 82 (5th Cir. 1980) (defendant's contentions are wholly conclusory and unsupported by factual allegations or proof, and as such are without merit).

Pharr has failed to meet his burden under *Strickland* to establish as to any claim raised that his counsel's representation fell below an objective standard of reasonableness, and that he was prejudiced by counsel's alleged errors. Thus, his claims of ineffective assistance of counsel at sentencing should be denied.

### 3. A hearing is not required to resolve Pharr's claims.

"A hearing is not required on patently frivolous claims or those which are based upon unsupported generalizations. Nor is a hearing required where the petitioner's allegations are affirmatively contradicted by the record."

*Holmes v. United States*, 876 F.2d 1545, 1553 (11th Cir. 1989) (quoting *United States v. Guerra*, 588 F.2d 519, 520-21 (5th Cir. 1979)). "A federal habeas corpus petitioner is entitled to an evidentiary hearing only where the petitioner alleges facts which, if proven, would entitle him to relief." *Futch v. Dugger*, 874 F.2d 1483, 1485 (11th Cir. 1989). Accordingly, where a claim is arguably valid, and it cannot be "conclusively" rejected based on the face of "the motion and the files and records of the case" alone, an evidentiary hearing is necessary. 28 U.S.C. § 2255.

Here, Pharr does not allege facts that are not found in the record of the case. Pharr's claims can be conclusively resolved by this Court without an evidentiary hearing. Pharr's claim that he is entitled to a minor role adjustment is affirmatively contradicted by the record. Further, he cites no supporting law to show that failing to request a variance due to the COVID-19 pandemic constitutes ineffective assistance of counsel.

## CONCLUSION

For the foregoing reasons, Pharr's 28 U.S.C. § 2255 motion should be denied.

>
> Respectfully submitted,
>
> KURT R. ERSKINE
> *Acting United States Attorney*
>
>
> /s/CALVIN A. LEIPOLD, III
> *Assistant United States Attorney*
> Georgia Bar No. 442379
> Calvin.leipold@usdoj.gov

**Certificate of Service**

The United States Attorney's Office served this document today by sending a copy by first class mail with sufficient postage to:

>Vincent Pharr, #72602-019
>Federal Correctional Institution
>P.O. Box 800
>Herlong, CA 96113

September 1, 2021

/s/ CALVIN A. LEIPOLD, III

CALVIN A. LEIPOLD, III

*Assistant United States Attorney*