# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | | |
|---|---|---|
| VINCENT T. PHARR, | : | MOTION TO VACATE |
| Fed. Reg. No. 72602-019, | : | 28 U.S.C. §2255 |
| Movant, | : | |
| | : | CRIMINAL NO. |
| v. | : | 1:19-CR-346-MHC-JSA |
| | : | |
| UNITED STATES, | : | CIVIL ACTION NO. |
| Respondent. | : | 1:21-CV-2912-MHC-JSA |

**MAGISTRATE JUDGE'S FINAL REPORT AND RECOMMENDATION**

Movant Vincent T. Pharr filed a *pro se* motion to vacate his sentence pursuant to 28 U.S.C. § 2255 on July 13, 2021,[1] in which he raised two claims that counsel was ineffective at sentencing. (Doc. 35). For the reasons that follow, the undersigned hereby **RECOMMENDS** that the Government's motion to dismiss the §2255 motion be **GRANTED** and that the instant motion to vacate sentence be **DISMISSED** as untimely.

---

[1] Under the federal "mailbox rule," both a *pro se* federal habeas petition and a §2255 motion are deemed to be filed on the date they were delivered to prison authorities for mailing, and absent evidence to the contrary, the Court presumes the prisoner delivered his pleading to prison officials on the day it was signed. *See Day v. Hall*, 528 F.3d 1315, 1318 (11th Cir. 2008).

I.  Procedural History

On January 3, 2020, Movant, represented by L. David Wolfe, entered a negotiated guilty plea to one count of possession with the intent to distribute less than 50 kilograms of marijuana in violation of 21 U.S.C. §§841(a)(1) and 841(b)(1)(D) (Count One), and one count of possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. §924(c)(1)(A) (Count Two).[1] On May 5, 2020,[2] U.S. District Judge Mark H. Cohen sentenced Movant to a total of 81 months. (*Id.* at 18; Doc. 33). Movant did not file a direct appeal of his convictions and sentences.

Movant executed the instant §2255 motion to vacate on July 14, 2021, and raises two claims for ineffective assistance of counsel. (Doc. 35). Movant argues he is entitled to equitable tolling based on his transfers and his time in quarantine and lockdowns due to the COVID-19 pandemic, and as a result his §2255 motion is

---

[1] In exchange for the plea, the Government agreed to dismiss the third count of the indictment for possession of a weapon by a convicted felon. (*See* Doc. 7, Doc. 25-1 at 5, Doc. 34 at 17).

[2] The Government incorrectly states that the date of sentencing was April 5, 2020, and uses that erroneous date when it calculates the date on which Movant's convictions and sentences became final. (Doc. 39 at 2, 5).

not untimely. The Government responds that the motion is, in fact, time-barred and that Movant is not entitled to equitable tolling. (Doc. 39).[3]

III.  Analysis

    A.  The Motion to Vacate is Untimely.

Under the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), federal prisoners must file a 28 U.S.C. §2255 motion to vacate within one year of the latest of four specified events:

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making such a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. §2255(f). Here, Movant's sentence was entered on May 5, 2020, and he had fourteen (14) days to file an appeal with the Eleventh Circuit. *See* Fed. R. App. P. 4(b)(1)(A). Having not filed an appeal, Movant's convictions became final on

---

[3] In the alternative, the Government argues that Movant has not demonstrated ineffective assistance of counsel. Because the Court finds that the §2255 motion is untimely, it is not necessary to discuss this argument.

May 19, 2020, and without tolling, he had until May 19, 2021, to file a §2255 motion. The instant motion, filed almost two months after the limitation period expired, is untimely.

      B.    <u>Movant Is Not Entitled To Equitable Tolling.</u>

The AEDPA's one-year limitation period may be equitably tolled if a movant shows that "'(1) he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing.'" *Borgesano v. United States*, No. 20-11453, 2021 WL 2879696, at *5 (11th Cir. July 9, 2021) (quoting *Holland v. Florida*, 560 U.S. 631, 649 (2010)). To be entitled to equitable tolling a movant must show that he has been pursuing his rights diligently, *Lawrence v. Florida*, 549 U.S. 327, 336 (2007), and a movant "bears the difficult burden of showing specific facts to support his claim of extraordinary circumstances and due diligence." *Mazola v. United States*, 294 F. App'x 480, 482 (11th Cir. 2008); *see also Brown v. Barrow*, 512 F.3d 1304, 1307 (11th Cir. 2008); *Wade v. Battle*, 379 F.3d 1254, 1265 (11th Cir. 2004); *Dodd v. United States*, 365 F.3d 1273, 1282 (11th Cir. 2004). "Equitable tolling 'is an extraordinary remedy limited to rare and exceptional circumstances' and typically should be 'applied sparingly.'" *Clemons v. Comm'r, Ala. Dep't of Corr.*, 967 F.3d 1231, 1241 (11th Cir. 2020) (quoting *Cadet v. Fla. Dep't of Corr.*, 853 F.3d 1216, 1221 (11th Cir. 2017)). And "mere conclusory allegations are not sufficient to raise the issue." *Doe v. United*

*States*, 469 F. App'x 798, 800 (11th Cir. 2012).  Movant has not met his burden of showing that equitable tolling should apply.

Movant argues that the following events constituted extraordinary circumstances that warrant equitable tolling:

> Pharr arrived at USP Atlanta (holdover) on or about February 26, 2020. Two weeks prior to his scheduled May 5, 2020 sentencing hearing, Pharr was placed in quarantine in the Special Housing Unit (SHU) at the facility. Immediately following his court appearance, Pharr was placed back into quarantine in SHU, where he remained until he was transferred on or about October 16, 2020.
>
> Upon arriving at the Federal Transfer Center (FTC) in Oklahoma City, Oklahoma, Pharr was placed in quarantine for 28 days. From FTC Oklahoma City, he was transferred to USP Victorville (holdover), California, where he was quarantined for 3 days before embarking on a day-long bus journey to FCI Herlong in Northern California. He arrived at FCI Herlong on or about November 16, 2020 – arriving just as a full COVID-19 outbreak occurred at the facility. See Exhibit A, Warden's Lockdown Memo.  Pharr and other new arrivals were placed in quarantine in the Reno housing unit, where he was quarantined for another 28 days.  It should be noted that during the lockdown, Pharr was locked in his cell for 24-hours a day and was denied access to commissary, law library, recreation, and use of the telephones and emails.  After his 28 day stay in the Reno housing unit, Pharr was transferred to the Sierra-A housing unit, which still remained on 24-hour lockdown, but the inmates in the unit had all tested negative for COVID-19.
>
> On or about March 1, 2021, the facility began a "modified" lockdown, in which inmates could spend half hour outside of their assigned cells[] to shower and use the telephone and emails. However, inmates were denied access to the law library. About a month later, the hours outside the cell were increased to two hours each day along with access to outside recreation for one hour per week. Limited access to the law library was given to some inmates who had verifiable "open cases." He did not qualify for this privilege because his criminal case had been

5

>closed and he did not have any motions pending in either the Eleventh Circuit or the Supreme Court.
>
>On or about May 1, 2021, inmates were allowed outside of their cells from 6:30 a.m. to 8:30 p.m., along with outside recreation access three times per week. Limited work opportunities became available in some areas such as Laundry, Food Service, Commissary, and Recreation. The law library still remained open to only a small number of inmates who had open cases, about 20-25 inmates out of 1156 inmates. On or about June 1, 2021, another inmate housed in Sierra-A housing unit began working in the law library as a clerk and who recently started assisting other inmates, including Pharr, with their legal cases.

(Doc. 35 at 6-8).

Before the COVID-19 pandemic, it was settled law in the Eleventh Circuit that lockdowns, solitary confinement, lack of access to legal papers or the law library, and/or transfers between prisons do not constitute extraordinary circumstances to warrant equitable tolling. *See, e.g., Jackson v. McLaughlin*, No. 17-11474-B, 2017 WL 4844624, at *2 (11th Cir. July 12, 2017) ("[R]estricted access to a law library, lock-downs, and solitary confinement do not qualify as extraordinary circumstances to warrant equitable tolling."); *Paulcin v. McDonough*, 259 F. App'x 211, 213 (11th Cir. 2017) (holding no extraordinary circumstances where the petitioner claimed he was transferred and deprived access to his legal papers and the law library); *Dodd v. United States*, 365 F.3d 1273, 1283 (11th Cir. 2004) ("[L]ockdowns and periods in which a prisoner is separated from his legal papers are not 'extraordinary circumstances' in which equitable tolling is appropriate."). That law does not change simply because of the pandemic. *See*

6

*Powell v. United States*, No. 21-12432-J, 2022 WL 2811987, at *1 (11th Cir. Feb. 8, 2022) ("Under this Court's precedents, lockdowns and similar limitations imposed because of the COVID-19 pandemic were not extraordinary circumstances which by themselves justify equitable tolling. . . ."); *see also Rush v. Sec'y, Fla. Dep't of Corr.*, No. 21-10218-C, 2021 WL 3134763, at *1 (11th Cir. June 22, 2021) ("He also could not show extraordinary circumstances, as his circumstances were not different than any other prisoner attempting to access legal resources, as they all were subject to COVID-19 protocols."); *Shaw v. United States*, No. 2:18-cv-43, 2021 WL 3205067, at *3 (S.D. Ga. June 24, 2021) (citing cases in the Eleventh Circuit that have held that lockdown status because of the pandemic does not present extraordinary circumstances); *Crist v. United States*, Nos. 21-cv-98-JCH-KBM, 16-cr-4356-JHC-KBM, 2022 WL 1442968, at *3 (D. N.M. May 6, 2022) (stating that the "law has not changed in the context of the pandemic" that a lockdown that impedes access to relevant law, lack of library access or to legal inmate help do not constitute extraordinary circumstances for equitable tolling to apply), *appeal filed*, No. 22-2090 (10th Cir. Aug. 8, 2022).

    Even if the totality of the events during the lock-down at FCI-Herlong together were to constitute extraordinary circumstances, Movant has provided no allegations at all about what efforts he made to attempt to file a §2255 motion during the limitation period. Instead, he simply states that he acted with diligence because he

filed his §2255 motion less than sixty days *after* the limitation period expired. (Doc. 42 at 4).

Indeed, although Movant states that he was not able to purchase stamps from November 18, 2020, until mid-May of 2021 when commissary items were brought to the units [Doc. 42 at 2], it is not clear whether he was deprived of writing implements that entire time. Regardless, Movant does not indicate that he was deprived of any writing implements or stamps during the five months that he was in quarantine at USP-Atlanta from May 5, 2020, through October 16, 2020, or during his quarantine for twenty-eight days at FTC-Oklahoma City. And Movant has provided no facts whatsoever that at any time during the limitation period he attempted to timely file his §2255 motion and was thwarted thereby, which is required to demonstrate that he exercised diligence. *See, e.g., Dunn v. Sec'y, Dep't of Corr.*, 808 F. App'x 778, 783 (11th Cir. 2020) (affirming finding that petitioner was not diligent because she did not, *inter alia*, "undert[ake] any action to timely file the motion that would suggest reasonable diligence"); *Myers v. Allen*, 420 F. App'x 924, 927 (11th Cir. 2011) ("Myers's failure to allege that he took any steps to attempt to advance or monitor his case is fatal to his equitable tolling argument."); *Bell v. Sec'y, Dep't of Corr.*, 248 F. App'x 101, 104 (11th Cir. 2007) (affirming dismissal of petition as untimely and finding that equitable tolling did not apply because there was no record evidence that

petitioner attempted to do anything with regard to a habeas petition before the limitation period expired or show that prison officials thwarted his efforts). Thus, equitable tolling is not warranted, and the instant §2255 motion is untimely.

IV. Conclusion

Based on the foregoing reasons, **IT IS HEREBY RECOMMENDED** that Vincent T. Pharr's motion to vacate his sentence [Doc. 35] be **DISMISSED AS UNTIMELY**.

V. Certificate Of Appealability

Pursuant to Rule 11 of the Rules Governing § 2255 Cases, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. . . . If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." 28 U.S.C. § 2253(c)(2) provides that a certificate of appealability ("COA") may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." In order for the certification requirement to fulfill its function of weeding out frivolous appeals, a court should not automatically issue a COA; rather, the applicant must prove "something more than the absence of frivolity" or "the existence of mere 'good faith' on his or her part." *Miller-El v. Cockrell*, 537 U.S. 322, 338 (2003) (citations omitted).

Movant need not prove, however, that some jurists would grant the § 2255 motion. *See id.* "The question is the debatability of the underlying constitutional claim, not the resolution of that debate." *See Lamarca v. Secretary, Dep't of Corr.*, 568 F.3d 929, 934 (11th Cir. 2009) (citing *Miller-El*, 537 U.S. at 325). In other words, Movant need only demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Based on the foregoing discussion, reasonable jurists would not find "debatable or wrong" the undersigned's determination that the motion is untimely and that Movant has not demonstrated that he is entitled to equitable tolling. *See Slack*, 529 U.S. at 484.

Accordingly, **IT IS FURTHER RECOMMENDED** that a COA be denied.

The Clerk is **DIRECTED** to terminate the reference to the undersigned Magistrate Judge.

**IT IS SO RECOMMENDED** this 28th day of September, 2022.

_____
JUSTIN S. ANAND
UNITED STATES MAGISTRATE JUDGE